UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
_____
                                 :
JAMAL MUHAMMAD,                  :
                                 :
          Petitioner,            :    Civ. No. 13-5278 (NLH)
                                 :
     v.                          :    OPINION
                                 :
BEVERLY HASTINGS, et al.,        :
                                 :
          Respondents.           :
_____:
```

APPEARANCES:
Jamal Muhammad, #405130/877409B
Northern State Prison
168 Frontage Rd.
P.O. Box 2300
Newark, NJ 07114
     Petitioner, pro se

Mario C. Formica, Esq.
Atlantic County Prosecutor's Office
4997 Unami Boulevard
Mays Landing, NJ 08201
     Counsel for Respondents

HILLMAN, District Judge

     This matter is before the Court pursuant to Petitioner

Jamal Muhammad's submission of a Petition (ECF No. 1) for writ

of habeas corpus, under 28 U.S.C. § 2254, challenging his state

court conviction for felony murder and related offenses.  For

the reasons set forth below, the Petition will be DENIED.

I.   FACTUAL BACKGROUND and PROCEDURAL HISTORY

A detailed discussion of the factual background of this case is set forth in the appellate court's decision on direct appeal:

> On October 22, 1996, Vaughn Rollins was shot and killed.  For several weeks before that, defendant and his co-defendant, Na'eem Santiago, were attempting to obtain a gun.  They approached Stephon Duggan, an individual known to defendant, for this purpose. Defendant told Duggan he needed a gun because "he was having problems."  This apparently referred to money problems, and defendant and Santiago told Duggan they intended to use the gun to rob people.  Duggan asked several people about Santiago and on October 20, 1996, met with defendant and Santiago again and agreed to give them a gun.  He handed a loaded nickel-plated .38 caliber semi-automatic handgun to defendant, who then turned it over to Santiago, who placed it in his waistband.  Defendant and Santiago discussed potential robbery victims.  Included among them was Vaughn Rollins, but Duggan told them not to rob him because he was his cousin.
>
> This meeting took place on the street in Atlantic City.  While the three men were still together, a young man, Kenneth Howard, rode past on a bicycle. Defendant and Santiago proceeded to rob him.  They wore ski masks.  Santiago pressed the gun to Howard's ribs and cut him in the neck and leg with a butcher knife.  They ordered Howard to remove his clothing (except his underwear, socks and shirt) and crawl under a parked truck.  The two then rode off, one peddling, the other on the handlebars, on Howard's bicycle with Howard's clothes.  Having witnessed this event, Duggan claims he had second thoughts about giving the gun to defendant and Santiago and claims he made several requests that it be returned.
>
> On October 22, 1996, defendant and Santiago spent much of the day in the Venice Park section of Atlantic City.  Between 7:00 and 8:00 p.m., Rollins drove up, accompanied by Anthony Jones. Defendant and Santiago were sitting together on a porch.  There were between

fifteen and thirty young people congregating on porches and in the street in that immediate vicinity. Jones got out of the car and went into an apartment building to visit his girlfriend.  He told Rollins he would be out in ten to fifteen minutes.  Rollins sat in the car and was counting money.

A man later identified as Santiago approached Rollins as he sat in the car.  Santiago pulled on a ski mask, brandished a handgun, and demanded Rollins give him the money.  Rollins did not comply.  Santiago fired one shot, which struck and killed Rollins. Immediately after the shot rang out, Santiago left the scene, leaving the view of witnesses on the street by going around the corner.  Defendant proceeded around the same corner, then returned to the porch and retrieved his jacket, after which he left the area, going around that same corner in the same direction as Santiago.

Informed of the shooting, Duggan went to the hospital where Rollins lay dying.  He informed Rollins' father that night that he had supplied the gun to defendant and Santiago that killed his son.  Duggan contacted Santiago, who acknowledged killing Rollins, but claimed it was an accident.  Later that night, Santiago went to Aaron McCoy's apartment seeking advice.  He told McCoy he had killed Rollins.  McCoy called a cab for Santiago, and "told him to go over the bridge, throw the gun in the water and just get lost."

Three days later, after attending Rollins' funeral, Shanita Alvarez and Sequoya Walker went to Philadelphia, where they happened to encounter Santiago at the bus station.  Santiago asked them not to tell anyone they saw him and that he was leaving for "like Arizona somewhere" because the police "were trying to put a body on him," referring to Rollins. Santiago remained a fugitive until he was arrested for the murder of Rollins in Jacksonville, Florida on May 1, 1998.  Several days later, defendant turned himself in to the New Jersey authorities.

State v. Muhammad, 359 N.J. Super. 361, 370-71, 820 A.2d 70, 75-76 (App. Div. 2003).

3

Petitioner and Santiago were indicted and tried together. At trial, Petitioner's counsel argued that there was no evidence which could link Petitioner to the shooting. The State, however, asserted that Petitioner was culpable based on a theory of accomplice liability. During the trial,

> Santiago's role as the shooter was supported by substantial evidence, including eyewitness testimony identifying him as the shooter, his admission to McCoy and Duggan that he killed Rollins, and his flight to avoid prosecution. Defendant's role in the killing was more attenuated. At the time of the shooting, defendant was sitting on the porch of a nearby apartment building, along with many other people who were out in the neighborhood that evening. He had been with Santiago in the neighborhood throughout the day and left the scene after the shooting with Santiago. These circumstances alone surely would not support a conviction for Santiago's conduct.
>
> The evidence linking defendant to the crime is derived substantially from Duggan's account of his conversations with and observations of defendant and Santiago on and before October 20, 1996, in furnishing them with a gun which they said they would use to rob people, including Rollins as a prospective target, and watching them actually use the gun to rob Howard. Howard identified Santiago, but could not identify the other masked perpetrator who robbed him. Duggan's testimony, therefore, was crucial in implicating defendant.

State v. Muhammad, 359 N.J. Super. at 373-74.

At the conclusion of trial, the jury convicted Petitioner of third-degree unlawful possession of a hand gun, N.J. STAT. ANN. 2C:39-5b (count one); second-degree possession of a hand gun for an unlawful purpose, N.J. STAT. ANN. 2C:39-4a (count two); first-degree armed robbery, N.J. STAT. ANN. 2C:15-1 (count three);

4

first-degree felony murder, N.J. STAT. ANN. 2C:11-3(a)(3) (count four); first-degree knowing or purposeful murder, N.J. STAT. ANN. 2C:11-3(a)(1), (2) (count five); and second-degree conspiracy to commit armed robbery, N.J. STAT. ANN. 2C:15-1, N.J. STAT. ANN. 2C:5-2 (count six).  The murder count was merged with felony murder and Petitioner was sentenced to a term of life imprisonment with a thirty-year period of parole ineligibility. For the remaining counts, some of which were merged, Petitioner received lesser sentences to run concurrent to his sentence for murder.

Petitioner appealed and the appellate court affirmed, see State v. Muhammad, 359 N.J. Super. 361, and the New Jersey Supreme Court denied certification, see State v. Muhammad, 178 N.J. 36, 834 A.2d 408 (2003).  Petitioner then applied for post-conviction relief ("PCR"), which was denied by the trial court. On appeal, the appellate court remanded for a new hearing after determining that Petitioner's PCR counsel had failed to present all of Petitioner's PCR claims and had filed a deficient brief. See State v. Muhammad, No. A-3219-06T4, 2010 WL 1330606 (N.J. Super. Ct. App. Div. Mar. 31, 2010).  On remand, the trial court again denied PCR relief and, on appeal, the appellate court affirmed. See State v. Muhammad, No. A-5492-10T3, 2012 WL 4448782 (N.J. Super. Ct. App. Div. Sept. 27, 2012).  The New

Jersey Supreme Court denied the petition for certification. <u>See</u>
<u>State v. Muhammad</u>, 213 N.J. 388, 63 A.3d 227 (2013).

Petitioner then filed the instant petition for writ of
habeas corpus under 28 U.S.C. § 2254. (ECF No. 1).  In his
Petition, he asserts seven grounds for relief.  Specifically, he
alleges: (1) ineffective assistance of counsel due to his trial
counsel's failure to move for a jury charge on the lesser-
included offenses of aggravated manslaughter and reckless
manslaughter; (2) ineffective assistance of counsel due to trial
counsel's failure to move for a severance of Petitioner's trial
from that of the co-defendant, and due to trial counsel's
failure to advance the theory that the victim was shot not in
the course of a robbery, but as the result a dispute over a
girl; (3) ineffective assistance of counsel due to trial
counsel's failure to put forth evidence that Petitioner did not
participate with the murder, and due to trial counsel's failure
to challenge the State's theory that the victim was killed in
the course of a robbery; (4) ineffective assistance of counsel
due to trial counsel's failure to adequately cross-examine the
State's witnesses; (5) denial of due process because the lack of
evidence produced by the State should have resulted in an
acquittal at the conclusion of trial; (6) denial of due process
due to the trial court's admission of "other crimes" evidence;

and (7) denial of due process due to the trial court's failure to excuse Juror No. 8.

Respondents filed their Answer on September 8, 2014. (ECF No. 9). Petitioner was granted an extension of time in which to submit his Reply, which was filed on May 4, 2015. (ECF No. 12). In an Order dated December 10, 2015 (ECF No. 13), this Court directed Respondent to file a Supplemental Answer, which they filed on December 15, 2015 (ECF No. 14). Petitioner submitted his Supplemental Reply on February 1, 2016. (ECF No. 16). This matter is now fully briefed and the Court has considered all submissions by the parties.

## II.  STANDARDS OF REVIEW

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

7

established Federal law, as determined by the Supreme
Court of the United States; or
(2) resulted in a decision that was based on an
unreasonable determination of the facts in light of
the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court
precedent "if the state court applies a rule that contradicts
the governing law set forth in [Supreme Court] cases," or "if
the state court confronts a set of facts that are materially
indistinguishable from a decision of th[e] Court and
nevertheless arrives at a result different from [the Court's]
precedent." Williams v. Taylor, 529 U.S. 362, 405-06, 120 S.C t.
1495, 146 L.Ed.2d 389 (2000) (O'Connor, J., for the Court, Part
II). A state court decision "involve[s] an unreasonable
application" of federal law "if the state court identifies the
correct governing legal rule from [the Supreme] Court's cases
but unreasonably applies it to the facts of the particular state
prisoner's case," and may involve an "unreasonable application"
of federal law "if the state court either unreasonably extends a
legal principle from [the Supreme Court's] precedent to a new
context where it should not apply or unreasonably refuses to
extend that principle to a new context where it should apply,"
(although the Supreme Court expressly declined to decide the
latter). Id. at 407-09.

To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. See id. at 409.  In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts. See Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal case law, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent." Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3, 123 S. Ct. 362, 154 L.Ed.2d 263 (2002); Woodford v. Visciotti, 537 U.S. 19, 123 S. Ct. 357, 154 L.Ed.2d 279 (2002)).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007) (citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L.Ed.2d 251 (1976)); Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L.Ed.2d 652 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce

v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney
General, 878 F.2d 714, 721-22 (3d Cir. 1989).

### III. DISCUSSION

#### A. Ineffective Assistance of Counsel Claims

Petitioner's first four grounds for relief are based on his
assertion that he was denied his Sixth Amendment right to
effective assistance of counsel.  Three of these claims relate
to his trial counsel's failure to introduce or develop an
alternative defense theory at trial.  Specifically, Petitioner
alleges that evidence existed which showed that the shooting was
not the result of a robbery, but instead was motivated by a
dispute that Santiago had with the victim regarding the victim
"fooling around with [Santiago's][1] girlfriend." (Pet. 11, ECF No.
1).  The PCR and appellate court referred to this theory as the
"love triangle defense." State v. Muhammad, No. A-5492-10T3,
2012 WL 4448782, at *4.  Because each of Petitioner's claims for
ineffective assistance is premised on some aspect of the love
triangle defense, this Court will address the grounds for relief

---

[1] At several points in his Petition, Petitioner states that the
shooting occurred because the victim had been fooling around
with "petitioner's" girlfriend. (Pet. 11, ECF No. 1).  This is a
mistake.  Petitioner later corrects himself and states that the
dispute involved the "co-defendant's" girlfriend. (Pet. 16, ECF
No. 1).  It is clear from the facts alleged, and from the
record, that Petitioner's theory is that there was a dispute
between his co-defendant, Santiago, and the victim regarding
Santiago's girlfriend, not Petitioner's.

not in the order presented in the Petition, but in an order which resolves each ground most efficiently and clearly.

    1. Standard of Review

    The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The right to counsel is "the right to effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) (emphasis added) (citations omitted), cited in Ross v. Varano, 712 F.3d 784, 797 (3d Cir. 2013).

    To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show both that his counsel's performance fell below an objective standard of reasonable professional assistance and that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome would have been different. Strickland v. Washington, 466 U.S. 668, 687, 694, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984). With respect to the "performance" prong, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.  With respect to the "prejudice" prong, a "reasonable probability" of prejudice is "a probability sufficient to undermine confidence in the outcome." Strickland at 694.  Thus,

counsel's errors must have been "so serious as to deprive the defendant of ... a trial whose result is reliable." Id. at 687. The performance and prejudice prongs of Strickland may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." Id. at 697.

There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. As a general matter, strategic choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable," though strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 690–91; see also Marshall v. Cathel, 428 F.3d 452, 462–63 (3d Cir. 2005). If counsel has been deficient in any way, however, the habeas court must determine whether the cumulative effect of counsel's errors prejudiced the defendant within the meaning of Strickland.

2. GROUND THREE

As his third ground for habeas relief, Petitioner asserts that he was denied effective assistance of counsel because his trial counsel failed to "use evidence that petitioner did not participate in any way in the murder, robbery or felony murder;

12

and to challenge the state's theory that the victim was killed in the course of a robbery, with evidence that the co-defendant admitted to killing the victim as a result of a heated dispute with the victim over the co-defendant's girlfriend[.]" (Pet. 18, ECF No. 1).  Thus, Petitioner challenges the strategy used by trial counsel and asserts that her failure to introduce the love triangle defense amounted to ineffective assistance of counsel.

As explained by the PCR appellate court, Petitioner's defense theory at trial was an "unknown assailant strategy." State v. Muhammad, No. A-5492-10T3, 2012 WL 4448782, at *4.  In other words, trial counsel alleged at trial that Petitioner was not in any way responsible for, or connected to, the shooting.

The state courts noted, and Petitioner concedes, that information regarding the potential love triangle was revealed during discovery. See id.; (Pet. 17, ECF No. 1).  Petitioner contends that he requested that his trial counsel utilize information regarding the love triangle in his defense, but that she failed to do so. (Pet. 16, ECF No. 1).  Petitioner further asserts that "the PCR court mischaracterized [his] claim as one of questioning or second guessing trial counsel's strategy, and did not address the certifications, stipulations, and sworn statements offered in support of the PCR." (Id.).

As an initial matter, this Court notes that Petitioner's claim is precisely a challenge to trial counsel's strategy and,

therefore, was not mischaracterized by the PCR court. Petitioner plainly states in his Ground Three that he was deprived of effective assistance of counsel because trial counsel did not "challenge the state's theory that the victim was killed in the course of a robbery with evidence [of the love triangle]." (Pet. 18, ECF No. 1).  Because Petitioner asserts that trial counsel should have used a different strategy, this claim cannot be characterized as anything but a challenge to his trial counsel's chosen strategy at trial.

Further, the PCR appellate court discussed the documents offered by Petitioner in support of his claim; including: "a 2009 stipulation between the prosecutor and Santiago's defense attorney, drafted in connection with Santiago's petition for PCR"; "a statement given by [the victim's] passenger, Byron Jones, on November 10, 2010, almost ten years after the trial"; and "an unsworn statement from [the victim's] father, George Rex, dated December 10, 2010[.]" <u>State v. Muhammad</u>, No. A-5492-10T3, 2012 WL 4448782, at *4.  Thus, contrary to Petitioner's assertion, the state court did "address the certifications, stipulations, and sworn statements offered in support of the PCR." (Pet. 16, ECF No. 1).

In analyzing this claim of ineffective assistance, the PCR appellate court stated:

Because no witness testified that [Petitioner] was the
shooter, his liability could be based only on theories
of conspiracy and aiding and abetting.  Thus, if the
jury determined that Santiago was not the shooter,
then no liability could be imposed on either
defendant.  Counsels' strategy, although reasonable,
was not successful, and both men were convicted of
murder, felony murder, and the other charges we have
set forth.

. . .

Following oral argument at the PCR hearing in this
matter, the PCR judge determined that trial counsel
was not ineffective under Strickland's standards in
failing to adopt a love triangle defense instead of an
unknown assailant strategy.  The judge suggested that,
given Duggan's testimony that defendant and Santiago
contemplated armed robbery and even accomplished it in
his presence, two days before the murder, a jury was
not likely to accept a love triangle defense as a
means for exculpating defendant.  Further, the trial
judge would not have granted severance of the trials
of the two defendants, given the charges of conspiracy
and aiding and abetting, and the State's theory that
defendant was vicariously liable for the murder and
the felony murder.  To say that counsel's strategy,
given the proofs, was ineffective, would be to engage
in impermissible second-guessing.  Further, the judge
noted that counsel had not established how the love
triangle theory would have been less problematic than
the unknown assailant theory when one took Duggan's
testimony into account.  The judge continued:

> So counsel may have said, you know what, you
> know, this lover theory, you know, that means I
> got to put them there at the scene because there
> was an axe to grind.  I'm better off going with
> the unknown assailant theory because then maybe
> the jury believes that, you know, my people, you
> know, my client, they weren't even around....

We agree with the PCR judge's evaluation.

State v. Muhammad, No. A-5492-10T3, 2012 WL 4448782, at *3, 4.

Ultimately, the PCR appellate court held that "[c]ounsel simply declined to use [the love triangle defense], because it would place Santiago at the murder scene and thus undercut her unidentified assailant defense." Id. at *5. The state courts determined that trial counsel made a strategic decision not to pursue the love triangle defense. Moreover, the state courts concluded that the unidentified assailant defense which trial counsel asserted at trial "had a rational factual basis." Id.

Because the State's case against Petitioner was premised on theories of conspiracy, Petitioner's guilt was entirely dependent on a finding of guilt for Santiago. Given these circumstances, the state courts concluded that it was reasonable for trial counsel to decline to assert a defense strategy which would place Santiago at the scene of the crime; and Petitioner's ineffective assistance claim was denied.

This Court cannot determine, based on this set of facts, that the state court's ruling was an unreasonable application of Strickland. As the Supreme Court observed, "[i]t is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence'." Harrington v. Richter, 562 U.S. 86, 105, 131 S. Ct. 770, 788, 178 L.Ed.2d 624 (2011) (quoting Strickland, 466 U.S. at 689-90). Moreover, "[e]stablishing that a state court's application of Strickland was unreasonable under §

16

2254(d) is all the more difficult." <u>Harrington v. Richter</u>, 562 U.S. at 105.

In this case, the state court set forth reasonable justification for its conclusion that counsel satisfied <u>Strickland's</u> deferential standard. <u>See id.</u> Specifically, in light of the evidence that Santiago and Defendant had participated in an armed robbery days before the shooting, it was reasonable for counsel to believe that a jury would not have accepted the love triangle defense with respect to the crime at issue in this case. Moreover, because the State's case against Petitioner was premised on theories of conspiracy, Petitioner's guilt was entirely dependent on a finding of guilt for Santiago; therefore, it was reasonable for trial counsel to decline to assert a defense strategy which would place Santiago at the scene of the crime. Given these circumstances, the state court's denial of this claim was not contrary to, or an unreasonable application of, federal law. Accordingly, Petitioner is not entitled to habeas relief on this ground.

3. <u>GROUND TWO</u>

As his second ground for relief, Petitioner asserts that he was denied effective assistance of counsel because his trial counsel failed to move for severance of Petitioner's trial from that of Santiago, his co-defendant. This claim also relates to the love triangle defense because Petitioner clarifies that his

purpose for requesting severance would have been so that trial counsel could have asserted a defense that Santiago shot the victim as a result of a dispute over Santiago's girlfriend. (Pet. 17, ECF No. 1).

In support of this claim, Petitioner relies on the same evidence relied on in support of his other grounds for relief. Petitioner also expressly relies on: the alleged confession that Santiago made to McCoy in which he admits that he shot the victim as a result of the dispute over his girlfriend; the statement of Joel Townsel, the only reported eyewitness to the shooting who indicated that there was only one assailant; and the statement of Stephon Duggan, who stated that Santiago admitted to him that the shooting was an accident. (Id.).

Petitioner expressly states that the purpose for severance would have been "to advance the defense that [Santiago] shot the victim over a girl and not to commit a robbery[.]" (Id.). Accordingly, Petitioner's claim boils down to a challenge to his trial counsel's decision not to pursue the love triangle defense.  This is the same claim of ineffective assistance that Petitioner asserted in his Ground Three which the Court addressed, and rejected, above.  Nevertheless, the Court will provide further discussion on trial counsel's failure to request a severance.

The PCR appellate court analyzed this issue in reviewing petitioner's PCR petition.  With specific respect to severance, the appellate court stated:

> [T]he trial judge would not have granted severance of the trials of the two defendants, given the charges of conspiracy and aiding and abetting, and the State's theory that [Petitioner] was vicariously liable for the murder and the felony murder.  To say that counsel's strategy, given the proofs, was ineffective, would be to engage in impermissible second-guessing. Further, the [PCR] judge noted that counsel had not established how the love triangle theory would have been less problematic than the unknown assailant theory when one took Duggan's testimony into account.

State v. Muhammad, No. A-5492-10T3, 2012 WL 4448782, at *4.

The PCR appellate court agreed with the PCR court's evaluation and rejected Petitioner's claim.  Moreover, the PCR appellate court addressed both the "performance" and "prejudice" prongs of Strickland and concluded that Petitioner failed to establish either with regard to his ineffective assistance of counsel claim.  Specifically, the state court determined that trial counsel's failure to request severance — like trial counsel's failure to request an instruction on lesser-included offenses, discussed infra — was a reasonable strategic decision. Id.  Further, the PCR appellate court determined that, even if severance had been requested, it would not have been granted by the judge, and the newly asserted defense theory was no more likely to be accepted by a jury than his existing theory. Id.

19

Given the circumstances of this case, and given the state court's reasonable justification, this Court cannot determine that the state court's rejection of this claim was contrary to, or an unreasonable application of, Strickland. See 28 U.S.C. § 2241(d)(1); see also Marshall, 428 F.3d at 462–63.  Petitioner is not entitled to habeas relief based on his second ground for relief.

4. GROUND FOUR

As his fourth ground for relief, Petitioner asserts that he was denied effective assistance of counsel because trial counsel failed to adequately cross-examine the State's witnesses. Petitioner clarifies that trial counsel should have questioned Aaron McCoy, Investigator McKelvey, and George Rex regarding the dispute that existed between the victim and Santiago because of Santiago's girlfriend.  Again, this claim relates to the love triangle defense and is a challenge to trial counsel's decision not to pursue that theory at trial.

As set forth above, the state court determined that trial counsel's decision not to pursue the love triangle defense was a reasonable strategic decision which did not amount to ineffective assistance of counsel.  Also, as discussed above, this Court cannot determine — given the circumstances and the reasonable justification offered by the state court — that the state court's rejection of Petitioner's claim was an

20

unreasonable application of <u>Strickland</u>.  Accordingly, this claim does not merit granting federal habeas relief.

    5. <u>GROUND ONE</u>

    As his first basis for habeas relief, Petitioner asserts that he was denied ineffective assistance of counsel because his trial counsel failed to move for a jury charge on the lesser-included offenses of aggravated manslaughter and reckless manslaughter.  Specifically, Petitioner states that his counsel "could have maintained a general denial of guilt defense, and still had the jury alternatively instructed that if they rejected the defense, and believed petitioner had some involvement, it would be up to the jury to determine his culpability with respect to the lesser included offenses." (Pet. 16, ECF No. 1).

    The appellate division analyzed this issue in reviewing petitioner's PCR petition.  In doing so, the PCR appellate court first noted that the trial court discussed the issue of lesser-included offenses during the charge conference.  The appellate court stated that "[a]fter consulting with their clients, both defense counsel determined not to request a manslaughter charge[.]" <u>State v. Muhammad</u>, No. A-5492-10T3, 2012 WL 4448782, at *6.  Indeed, the record shows that Petitioner's counsel informed the trial court, in Petitioner's presence, that she "had an opportunity to bring up the issue of lesser included

offenses with [Petitioner], Jamal Muhammad, and [she] believe[d] it [was] [] his wish to proceed without lesser included offenses on the jury form." (Trial Tr. 91:3-7, Feb. 23, 2000, ECF No. 9-6).

The PCR appellate court further noted that Petitioner's defense theory at trial was an "unknown assailant strategy." State v. Muhammad, No. A-5492-10T3, 2012 WL 4448782, at *4. Considering Petitioner's asserted defense, the appellate court agreed with the PCR judge's evaluation of this issue and determined that trial counsel's failure to request a lesser-included offense charge was a strategic decision that did not amount to ineffective assistance. See id.; see also (PCR Hr'g Tr. 29:7-24, Dec. 17, 2010, ECF No. 9-11). Specifically, both the PCR court and the PCR appellate court observed that a request for a lesser-included offense would have directly contradicted Petitioner's asserted defense theory at trial. Id.

Given these circumstances, this Court cannot determine that the state court's denial of this claim was an unreasonable application of Strickland. As an initial matter, as set forth above, the record shows that Petitioner agreed to proceed without lesser-included offenses. This fact undercuts Petitioner's assertion that trial counsel's performance was somehow deficient. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own

statements or actions.  Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant." Strickland, 466 U.S. at 691.

Moreover, as the state courts observed, a request for a charge of lesser-included offenses would have directly contradicted Petitioner's asserted defense theory at trial. See United States v. Ware, 595 F. App'x 118 (3d Cir. 2014) (finding that defense counsel's decision not to request lesser-included jury instruction was reasonable trial strategy because to do so would have been contrary to defense narrative that defendant had committed no crime).

The state court provided reasonable justification for its conclusion that trial counsel satisfied the deferential standards set forth in Strickland with respect to foregoing the lesser-included jury instruction. See Richter, 562 U.S. at 105. The state court's rejection of this claim is further supported by the fact that the record shows that Petitioner participated in the selection of this trial strategy. See Strickland, 466 U.S. at 691.  Accordingly, the state court's determination that trial counsel had a strategic reason for not requesting a lesser-included jury instruction was not an unreasonable application of Strickland.  Petitioner is not entitled to habeas relief on this claim. See Ware, 595 F. App'x 121 (finding no

ineffective assistance because attorneys had a strategic reason for not requesting a lesser-included jury instruction even though the strategy was unsuccessful); see also Scott v. Bartkowski, No. 11-3365, 2013 WL 4537651, at *24 (D.N.J. Aug. 27, 2013) (collecting cases) ("The denial of this claim was not an unreasonable application of the Strickland standard as lesser included offenses would have been completely inconsistent with petitioner's defense theory at trial.").

B. Due Process Claims

Petitioner's remaining three grounds for relief are premised on the theory that he was denied his right to due process. Again, the Court will address these claims not in the order presented in the Petition, but in an order which resolves them most efficiently and succinctly.

1. GROUND SIX

As his sixth ground for relief, Petitioner states that he was denied due process because the trial court admitted "other-crimes-evidence of an unrelated robbery and, the courts compounding the error by an erroneous and inadequate limiting instruction." (Pet. 22, ECF No. 1). Petitioner relies on the brief filed by appellate counsel on direct appeal in support of this claim.

In the brief in support of direct appeal, counsel for Petitioner argued that:

24

> [T]he probative value of the evidence was outweighed
> by its prejudicial impact, and because there was other
> less inflammatory evidence available to the state to
> establish possession of the weapon, motive and
> conspiracy, the admission of this other crimes
> evidence . . . coupled with the court's erroneous and
> inadequate limiting [jury] instruction, denied
> [Petitioner] due process and a fair trial.

(Appellate Br. 48, ECF No. 9-20).

As an initial matter, "the Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules." Marshall v. Lonberger, 459 U.S. 422, 438 n. 6 (1983). The admissibility of evidence is generally a question of state law which is not cognizable under habeas review. See Keller v. Larkins, 251 F.3d 408, 416 n. 2 (3d Cir. 2001) ("A federal habeas court, however, cannot decide whether the evidence in question was properly allowed under the state law of evidence"); Hickey v. Jeffes, 571 F.2d 762, 766 (3d Cir. 1978); Velez v. Lagana, No. 12-0430, 2015 WL 2344674, at *6 (D.N.J. May 14, 2015).

Moreover, Petitioner does not point to any Supreme Court case, nor does the appellate brief cite to any Supreme Court case, which clearly establishes that the admission of "other crimes" evidence constitutes a violation of federal fair trial rights.[2] To the contrary, the most relevant Supreme Court cases

---

[2] It is not sufficient simply to invoke "due process" or "fair trial" rights in the state court for purposes of exhaustion. See Keller v. Larkins, 251 F.3d 408, 414-415 (3d Cir. 2001).

suggest the opposite. See, e.g., Estelle v. McGuire, 502 U.S. 62, 112 S. Ct. 475, 116 L.Ed.2d 385 (1991) (allowing evidence of prior injuries in a trial for infant murder, and refusing habeas relief for a deficient limiting instruction); Greer v. Miller, 483 U.S. 756, 107 S. Ct. 3102, 97 L.Ed.2d 618 (1987) (no due process violation for prosecutor's question about defendant's post-arrest silence after objection was sustained and limiting instructions given); Spencer v. Texas, 385 U.S. 554, 87 S. Ct. 648, 17 L.Ed.2d 606 (1967) (rejecting a due process challenge to a state rule admitting evidence of prior similar crimes when the judge gives a limiting instruction); see also Minett v. Hendricks, 135 F. App'x 547, 553 (3d Cir. 2005) (rejecting claim that admission of "other crimes" evidence is contrary to or an unreasonable application of clearly established Supreme Court precedent).

"[The Supreme] Court has held on numerous occasions that it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific

_____

However, in the appellate brief, Petitioner explicitly invoked the Due Process Clause of the Fourteenth Amendment, as well as the Fifth and Sixth Amendments; and he sufficiently set forth the factual basis for his federal claim. (Appellate Br. 48, ECF No. 9-20).  Moreover, Respondents do not dispute the fact that Petitioner's claims have been properly exhausted.  Accordingly, this Court concludes that, "while his presentation barely passes muster, he did exhaust [t]his claim in state court." Minett v. Hendricks, 135 F. App'x 547, 552 (3d Cir. 2005).

legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. 111, 122, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251 (2009) (citation and internal quotation marks omitted).  Because the admission of "other crimes" evidence was not contrary to, or an unreasonable application of clearly established federal law, as determined by the Supreme Court, Petitioner is not entitled to habeas relief on Ground Six. See Minett v. Hendricks, 135 F. App'x at 553; see also Charlton v. Franklin, 503 F.3d 1112, 1115 (10th Cir. 2007) (state court's admission of evidence of petitioner's prior bad acts did not render trial fundamentally unfair or warrant habeas relief) (cited in Velez, No. 12-0430, 2015 WL 2344674, at *9).

    2. GROUND SEVEN

    In his seventh ground for relief, Petitioner asserts that he was denied due process because the trial court "fail[ed] to excuse Juror No. 8 and to voir dire the remaining jurors after Juror No. 8 indicated that he had discussed with them his fears about being a deliberating juror[.]" (Pet. 22, ECF No. 1). Petitioner further contends that this failure resulted in "jury taint which deprived Petitioner of a fair trial." (Id.). Petitioner again relies on the argument set forth in his appellate brief in support of this claim.[3]

---

[3] As with Petitioner's Ground Six, Petitioner has failed to expressly cite to Supreme Court case law in support of his

With respect to this claim, the record shows that, shortly after the jury received its final instruction, Juror No. 8 sent the court a note which read: "To be excused. Due to the area that I live [], blocks away from the murder scene, I feel unsure in the future about anyone living in general area." (Trial Tr. 130:19-23, Feb. 24, 2000, ECF No. 9-7). The judge then called Juror No. 8 into the courtroom and a colloquy ensued in which the judge discussed with Juror No. 8 the nature of his concern, the extent of his discussions with other jurors, and his ability to sit on the case and decide it fairly and impartially.

Juror No. 8 expressly indicated that he did not want to be excused (Id. at 131:6-7), that he only discussed with the other jurors the fact that he lived in the area where the shooting occurred (Id. at 132: 6-9), and that he did not have any problem with sitting on this case and deciding it fairly and impartially based on the evidence presented and the law as charged (Id. 132:10-18).

Under the Sixth and Fourteenth Amendments, a defendant may not be deprived of any liberty without due process of law and in

---

argument. However, the appellate brief twice references the Constitution and sufficiently sets forth the factual basis for Petitioner's federal claim. Furthermore, Respondents do not dispute the fact that this claim has been properly exhausted. Accordingly, as with Ground Six, this Court determines that Petitioner exhausted this claim in state court. See Minett, 135 F. App'x 547.

all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury. See Irvin v. Dowd, 366 U.S. 717, 722, 81 S. Ct. 1639, 6 L.Ed.2d 751 (1961) ("[T]he right to a jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors."). The bias of a juror may be actual or implied; that is, it may be bias in fact or bias conclusively presumed as a matter of law. United States v. Wood, 299 U.S. 123, 133, 57 S. Ct. 177, 81 L.Ed. 78 (1936).

Bias can be revealed by a juror's express admission of that fact, but more frequently, the reality of bias must be revealed by circumstantial evidence. See Morgan v. Illinois, 504 U.S. 719, 729-730, 112 S. Ct. 2222, 119 L.Ed.2d 492 (1992) (discussing juror bias in the context of voir dire). The United States Constitution does not require a new trial every time a juror has been placed in a potentially compromising situation because it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Smith v. Phillips, 455 U.S. 209, 217, 102 S. Ct. 940, 71 L.Ed.2d 78 (1982).

The question of bias is one of fact and best determined by the trial court's own assessment of a juror's impartiality, credibility and demeanor. See Patton v. Yount, 467 U.S. 1025, 1038, 104 S. Ct. 2885, 2892, 81 L. Ed. 2d 847 (1984); Rosales-

Lopez v. United States, 451 U.S. 182, 188, 101 S. Ct. 1629, 68 L.Ed.2d 22 (1981).  Under AEDPA, such factual determinations are "presumed to be correct," 28 U.S.C. § 2254(e)(1), and Petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." Id.

In this case, Petitioner raised this issue on direct appeal.  However, the appellate court determined that, pursuant to Rule 2:11-3(e)(2), the argument lacked sufficient merit to warrant discussion in a written opinion. State v. Muhammad, 359 N.J. Super. at 370.  Although the state court did not expressly address this issue, it is presumed to have been adjudicated on the merits. See, e.g., See Johnson v. Williams, 133 S. Ct. 1088, 1094, 185 L. Ed. 2d 105 reh'g denied, 133 S. Ct. 1858, 185 L. Ed. 2d 858 (2013) (citing Richter, 562 U.S. at 99) (holding that when a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits, within the meaning of AEDPA).

Accordingly, because this claim has been adjudicated on the merits in the state court, and because the factual presumption of the state court is presumed to be correct, the question for this Court is whether Petitioner has presented the clear and convincing evidence required to rebut § 2254(e)(1)'s presumption.  This Court determines that he has not.

Based on the colloquy between the trial judge and Juror No. 8, there is sufficient support in the record for the state court's conclusion that Juror No. 8 would be impartial. Petitioner simply did not present in his Petition clear and convincing evidence of bias that is needed to rebut § 2254(e)(1)'s presumption.  Accordingly, the state court's rejection of Petitioner's claim that Juror No. 8 should have been excused, and the remaining jurors subjected to another voir dire, was not an unreasonable determination. See 28 U.S.C. § 2254(d)(2).  Petitioner is not entitled to habeas relief on this claim.

3. <u>GROUND FIVE</u>

As his fifth ground for relief, Petitioner asserts that he was deprived of due process because "the lack of evidence produced by the state connecting defendant to the killing of the victim should have resulted in a judgment of acquittal at the end of the state's case[.]" (Pet. 20, ECF No. 1).

Petitioner raised this issue on direct appeal.[4]  However, the appellate court determined that, pursuant to Rule 2:11–

_____

[4] Petitioner raised this claim in his <u>pro se</u> submission in support of his direct appeal.  However, that document is not available on the docket.  To the extent this claim is unexhausted, the Court will deny it on the merits pursuant to 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"). <u>See</u> <u>Carrascosa v. McGuire</u>, 520 F.3d 249, 255

3(e)(2), the argument lacked sufficient merit to warrant discussion in a written opinion. State v. Muhammad, 359 N.J. Super. at 370.  As set forth above, although the state court did not expressly address this issue, it is presumed to have been adjudicated on the merits. See Johnson, 133 S. Ct. at 1094.

Where a state court's decision is unaccompanied by an explanation, the federal habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief. Richter, 562 U.S. 86.  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 101 (citing Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L.Ed.2d 938 (2004)).  "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it

---

n.10 (3d Cir. 2008) ("There is, however, a difference between granting an unexhausted habeas claim on the merits and denying such a claim on the merits, as recognized by the plain language of section 2254(b)(2) . . . . Denying an unexhausted claim on the merits is consistent with the statute"); Taylor v. Horn, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of Taylor's claims on the merits, we need not address exhaustion"); Bronshtein v. Horn, 404 F.3d 700, 728 (3d Cir. 2005) ("We would permit Bronshtein to attempt on remand to establish a reason to excuse his procedural default, but we find it unnecessary to do so because it is apparent that the claims in question lack merit.  Under 28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted, and we take that approach here").

must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. at 102.

A sufficiency of the evidence claim is governed by Jackson v. Virginia, 443 U.S. 307, 318, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). "[I]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 — if the settled procedural prerequisites for such a claim have otherwise been satisfied — the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Id. at 324; accord McDaniel v. Brown, 558 U.S. 120, 121, 130 S. Ct. 665, 666, 175 L. Ed. 2d 582 (2010).

> [Jackson] requires a reviewing court to review the evidence in the light most favorable to the prosecution.  Expressed more fully, this means a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."

McDaniel, 130 S. Ct. at 673 (quoting Jackson, 443 U.S. at 326); see also House v. Bell, 547 U.S. 518, 538, 126 S. Ct. 2064, 165 L.Ed.2d 1 (2006) ("When confronted with a challenge based on trial evidence, courts presume the jury resolved evidentiary

33

disputes reasonably so long as sufficient evidence supports the verdict.").

The Supreme Court emphasized that "the standard ... does not permit a court to make its own subjective determination of guilt or innocence." Jackson 443 U.S. at 320, n.13.  Moreover, "a reviewing court must consider all of the evidence admitted by the trial court, regardless whether that evidence was admitted erroneously." McDaniel, 130 S. Ct. at 672 (citation and internal quotation marks omitted).  Additionally, "under Jackson, the assessment of credibility of witnesses is generally beyond the scope of review." Schlup v. Delo, 513 U.S. 298, 330, 115 S. Ct. 851, 130 L.Ed.2d 808 (1995).

Therefore, the question for this Court is "whether, viewing the evidence in the light most favorable to the state, it was objectively unreasonable for the Appellate Division to conclude that a rational trier of fact could have found, beyond a reasonable doubt that [petitioner] was guilty[.]" Kamienski v. Hendricks, 332 F. App'x 740, 747 (3d Cir. 2009).

In this case, the State's theory was that Petitioner was guilty of felony murder because he conspired with Santiago to commit armed robbery, and because the killing occurred in the course of said armed robbery.

New Jersey Code defines conspiracy as follows:

34

A person is guilty of conspiracy with another person
or persons to commit a crime if with the purpose of
promoting or facilitating its commission he:

(1) Agrees with such other person or persons that
they or one or more of them will engage in conduct
which constitutes such crime or an attempt or
solicitation to commit such crime; or

(2) Agrees to aid such other person or persons in
the planning or commission of such crime or of an
attempt or solicitation to commit such crime.

N.J. STAT. ANN. § 2C:5-2(a).

Further, New Jersey Code defines robbery as follows:

A person is guilty of robbery if, in the course of
committing a theft, he:

(1) Inflicts bodily injury or uses force upon another;
or

(2) Threatens another with or purposely puts him in
fear of immediate bodily injury

. . .

N.J. STAT. ANN. § 2C:15-1(a).

Finally, New Jersey Code defines felony murder as follows:

criminal homicide constitutes murder when . . . (3) It
is committed when the actor, acting either alone or
with one or more other persons, is engaged in the
commission of, or an attempt to commit, or flight
after committing or attempting to commit robbery,
sexual assault, arson, burglary, kidnapping,
carjacking, criminal escape or terrorism . . . and in
the course of such crime or of immediate flight
therefrom, any person causes the death of a person
other than one of the participants[.]

N.J. STAT. ANN. § 2C:11-3(a)(3).

Thus, for Petitioner to have been found guilty of felony

murder, the State had to produce sufficient evidence to allow a

reasonable juror to conclude beyond a reasonable doubt that Petitioner engaged in a conspiracy with Santiago to commit robbery and that the death of the victim was caused at some time during the course of the robbery.

As an initial matter, although Petitioner offers a different motive for the murder, Petitioner does not dispute the fact that Santiago did, in fact, shoot and kill the victim. Moreover, on direct appeal the appellate court noted that "Santiago's role as the shooter was supported by substantial evidence, including eyewitness testimony identifying him as the shooter, his admission to McCoy and Duggan that he killed Rollins, and his flight to avoid prosecution." State v. Muhammad, 359 N.J. Super. at 373.

The appellate court then noted that the "evidence linking [Petitioner] to the crime [was] derived substantially from Duggan's account of his conversations with and observations of defendant and Santiago[.]" Id. Specifically, during trial Duggan testified that Petitioner came to him to get a gun (Trial Tr. 64:24-25, Feb. 17, 2000, ECF No. 9-4), which Petitioner immediately gave to Santiago (Id. at 72: 21-22). Duggan further testified that Petitioner and Santiago told him that "they was [sic] going to rob a couple of people" and that one of the names

mentioned as a target was Vaughn Rollins, the victim.[5] (Id. at 73:11-15).

Finally, Duggan testified that immediately after he gave the gun to Petitioner and Santiago, they committed a robbery in his presence. Specifically, Duggan testified that Santiago brandished a knife against a boy on a bike. Duggan stated that he walked away so he did not witness the entire robbery, but he confirmed that a few minutes later he saw Santiago with the boy's clothes and Petitioner with the boy's bike. (Id. at 77:14-19).

Based on this evidence, it was reasonable for the state court to determine that a rational jury could have found beyond a reasonable doubt that Petitioner (1) engaged in a conspiracy to commit robbery with Santiago with specific respect to the victim, Vaughn Rollins; and (2) that Santiago shot and killed the victim in the course of a robbery.

Contrary to Petitioner's assertions, there was evidence presented at trial which suggested that Petitioner "shared Santiago's purpose or intent [to rob the victim, Vaughn

---

[5] In his Reply, Petitioner states that "Duggan testified that he had no idea what the petitioner planned to do with the gun." (Pet'r's Reply 10, ECF No. 12). However, this assertion is contradicted by the record. Although at first he could not remember, the record indicates that Duggan later testified that Petitioner and Santiago referenced the victim, Vaughn Rollins, as a potential target of their intended robbery.

Rollins]." (Pet'r's Reply 14, ECF No. 12).  This Court cannot conclude, as Petitioner does, that "there simply is no logical connection between the facts and the conclusion." (Id.).

This Court notes, as the appellate court did on direct appeal, that Petitioner's "role in the killing was more attenuated." State v. Muhammad, 359 N.J. Super. at 373. However, in viewing the evidence in the light most favorable to the state, this Court does not find that it was objectively unreasonable for the appellate court to conclude that a rational trier of fact could have found, beyond a reasonable doubt that Petitioner was guilty of felony murder. See Jackson, 443 U.S. at 326.  Accordingly, the state court's rejection of Petitioner's claim — with respect to his conviction for felony murder — was not an unreasonable application of clearly established federal law.

Likewise, it was not unreasonable for the state court to reject Petitioner's challenge to his conviction for first degree knowing or purposeful murder.[6]  In New Jersey, "criminal homicide constitutes murder when: (1) The actor purposely causes death or serious bodily injury resulting in death; or (2) The actor knowingly causes death or serious bodily injury resulting in death." N.J. STAT. ANN. § 2C:11-3(a)(1)-(2).

---

[6] This murder count was merged with the felony murder for sentencing purposes.

It was not alleged during trial that Petitioner was the one to pull the trigger.  The State consistently argued that the Petitioner and Santiago conspired to rob the victim, and that Santiago shot and killed the victim.  The State did not present any evidence that Petitioner, through his own conduct, purposely or knowingly caused the death of the victim.

Rather, the judge explained to the jury with respect to the charge of first degree knowing and purposeful murder:

> If, after a consideration of all the evidence, you are convinced beyond a reasonable doubt that the defendant, Na'eem Santiago, either purposely or knowingly caused Vaugh Rollins' death or serious bodily injury and death, then your verdict should be guilty, and if you find that Jamal Muhammad under the principles of vicarious liability as I have explained that to you is responsible for the conduct of Na'eem Santiago, the [Petitioner] should be found guilty as well."

(Trial Tr. 116:20–117:4, Feb. 24, 2000, ECF No. 9-7).

With respect to the principles of vicarious liability that had been previously explained to the jury, the judge stated during jury instructions that "what is alleged here is that there is vicarious liability of [Petitioner] as a coconspirator for the conduct of Na'eem Santiago." (Id. at 96:4-6).  Further, as Respondents point out in their Answer and Supplemental Answer, the trial court further explained:

> Our law provides that a person is guilty of an offense if it's committed by his own conduct or by the conduct of another person for which he is legally accountable, or both, and a person is legally accountable for the

> conduct of another person when he is engaged in a
> conspiracy with such other person and the conduct is
> within the scope of the conspiracy.
>
> . . .
>
> As a coconspirator, you can be held liable for conduct
> which is beyond the scope of the conspiracy if it was
> reasonably foreseeable that that conduct would occur.
> So what I'm telling you is that a coconspirator can be
> liable for the commission of a substantive criminal
> acts [sic] which are not within the scope of the
> conspiracy if they are reasonably foreseeable as the
> necessary or natural consequence of the conspiracy.

(Id. at 97:25-98:6, 99:19-100:1).

Therefore, in order for Petitioner to have been found guilty of first degree knowing or purposeful murder based on a theory of vicarious liability, the State had to produce sufficient evidence to allow a reasonable juror to conclude beyond a reasonable doubt (1) that Petitioner engaged in a conspiracy to commit armed robbery with Santiago; and (2) that Santiago's substantive act of knowing or purposeful murder was reasonably foreseeable as the necessary or natural consequence of the conspiracy to commit armed robbery.[7]

---

[7] The Court notes that the charge of conspiracy to commit murder was dropped against both defendants at the close of the state's case. (Trial Tr. 50:16-18, Feb. 23, 2000, ECF No. 9-6) ("At this time, the state would dismiss the count against both of the defendants charging conspiracy to commit murder."). As explained above, Petitioner's conviction for first degree knowing or purposeful murder did not require the jury to conclude that Petitioner and Santiago conspired to commit murder — only that they conspired to commit armed robbery, and that the murder was a reasonably foreseeable consequence of that conspiracy. Therefore, dismissal of the conspiracy to commit murder charge was not inconsistent with the theory of liability

Given the evidence presented at trial, and discussed above, this Court cannot say that "it was objectively unreasonable for the Appellate Division to conclude that a rational trier of fact could have found, beyond a reasonable doubt that [petitioner] was guilty[.]" Kamienski, 332 F. App'x at 747; see also Smith v. United States, 133 S. Ct. 714, 719, 184 L. Ed. 2d 570 (2013) (holding that a defendant who joins a conspiracy "becomes responsible for the acts of his co-conspirators in pursuit of their common plot"); Pinkerton v. United States, 328 U.S. 640, 646-47, 66 S. Ct. 1180, 1184, 90 L. Ed. 1489 (1946) ("[S]o long as the partnership in crime continues, the partners act for each other in carrying it forward. It is settled that an overt act of one partner may be the act of all without any new agreement specifically directed to that act.") (internal quotations and citations omitted).  Accordingly, the state court's rejection of Petitioner's challenge to his conviction for first degree knowing and purposeful murder was not contrary to, or an unreasonable application of, clearly established federal law. See Jackson, 443 U.S. at 326.

For the reasons discussed above, Petitioner is not entitled to habeas relief on this ground.

---

under which Petitioner was found guilty of first degree knowing or purposeful murder.

IV.   <u>CERTIFICATE OF APPEALABILITY</u>

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327, 123 S. Ct. 1029, 154 L.Ed.2d 931 (2003) (citation omitted), cited in <u>Eley v. Erickson</u>, 712 F.3d 837, 845 (3d Cir. 2013).

Here, jurists of reason would not disagree with this Court's resolution of Petitioner's claims.  No certificate of appealability will issue.

V.   <u>CONCLUSION</u>

For the reasons set forth above, the Petition for a Writ of Habeas Corpus under Title 28 U.S.C. § 2254 will be denied in part and granted in part.  An appropriate Order follows.

__s/ Noel L. Hillman_____
NOEL L. HILLMAN
United States District Judge

Dated: September 26, 2016
At Camden, New Jersey